1

**KRONENBERGER ROSENFELD, LLP**

2   Karl S. Kronenberger (Bar No. 226112)
    Jeffrey M. Rosenfeld (Bar No. 222187)

3   150 Post Street, Suite 520
    San Francisco, CA 94108

4   Telephone: (415) 955-1155
    Facsimile: (415) 955-1158

5   karl@KRInternetLaw.com
    jeff@KRInternetLaw.com

6

7   Attorneys for Plaintiff
    SA Luxury Expeditions LLC

8

9

10                  **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**

11

12

13   **SA LUXURY EXPEDITIONS LLC**, a        Case No. 3:14-cv-4085
     Delaware corporation,

14

15              Plaintiff,                    **COMPLAINT FOR DAMAGES AND**
                                              **EQUITABLE AND OTHER RELIEF**

16        vs.
                                              **DEMAND FOR JURY TRIAL**

17

18   **LATIN AMERICA FOR LESS, LLC**, a
     Texas limited liability company, **BERNARD**

19   **SCHLEIEN**, an individual, *aka* Jose
     Castrellon, and **DOES 1-10,** inclusive,

20

21              Defendants.

22

23

24

25

26

27

28

**COMPLAINT**

Plaintiff SA Luxury Expeditions LLC ("SA Luxury"), a California limited liability company, by and through its attorneys of record, states and alleges as follows:

## INTRODUCTION

1.      SA Luxury is a travel agency that specializes in designing and managing luxury expeditions to South America.

2.      After SA Luxury was formed in 2010, the company experienced strong growth and earned widespread recognition of its SA LUXURY EXPEDITIONS trademark as a result of its superior track record in providing private, comfortable tours to South America overseen by personal destination experts.

3.      Defendants Bernard Schleien ("Schleien") and Latin America For Less, LLC ("LAFL") compete with SA Luxury.  Beginning in April 2012, Defendants began a series of malicious attacks against SA Luxury to disrupt SA Luxury's business.   In particular, Defendants engaged in the following misconduct:

- Defendants posted fake consumer reviews on third party websites, such as TripAdvisor, Fodors, Google, and Yelp!.

- Defendants created a website at <saluxuryexpeditions-reviews.org> that contained false and disparaging reviews about SA Luxury.

- Defendants submitted fake consumer leads to SA Luxury through SA Luxury's website.

- Defendants created "spam links" to SA Luxury's website to negatively affect its search engine optimization.

- Defendants bid on the SA LUXURY EXPEDITIONS trademark using Google AdWords to drive Internet users who were searching for SA Luxury to Defendants' deceptive <saluxuryexpeditions-reviews.org> website.

- Defendants filed a fraudulent application with the United States Patent and Trademark Office to register SA LUXURY EXPEDITIONS.

- Defendants engaged in click fraud with respect to SA Luxury's online ads, clicking on SA Luxury's ads (and causing SA Luxury to incur fees) with no

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

interest in purchasing SA Luxury's services.

- Defendants sent threatening emails to SA Luxury's principals to discourage them from competing with Defendants.

- Defendants made false and disparaging statements about SA Luxury to SA Luxury's contractors and service providers.

- Defendants made over 5,000 attempts to hack into SA Luxury's servers.

4.      Defendants' misconduct constitutes false advertising in violation of the Lanham Act, fraud, fraud on the trademark office, computer fraud and abuse, common law fraud, and interference with business expectancy.

5.      As a result of Defendants' misconduct, SA Luxury has been harmed and continues to be harmed.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338 for SA Luxury's claim under the Lanham Act, 15 U.S.C. §1125(a).  This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 for SA Luxury's claim under the Computer Fraud and Abuse Act, 18 U.S.C. §1030.  This Court has supplemental jurisdiction over SA Luxury's claims arising under the laws of the State of California under 28 U.S.C. §1367 because they are so related to SA Luxury's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events, omissions, and harm giving rise to SA Luxury's claims occurred within the District.

8.      This Court has personal jurisdiction over Defendants because they knowingly targeted their misconduct toward California, where SA Luxury resides and transacts business, and because Defendants used multiple California resources to effect their misconduct (including Google AdWords, Google Mail, Google Plus, and Yelp!).

Case No. 3:14-cv-4085

2

**COMPLAINT**

1

**INTRADISTRICT ASSIGNMENT**

2      9.      This action arose in San Francisco county because Plaintiff resides in this

3   County and because a substantial part of the events or omissions which gave rise to the

4   claims occurred in this County.   Thus, pursuant to Local Civil Rule 3-2, this action

5   should be assigned to the San Francisco Division or the Oakland Division.

6

**PARTIES**

7      10.      Plaintiff SA Luxury Expeditions LLC is a California limited liability company

8   with a primary office in San Francisco, California.

9      11.      On information and belief, Defendant Bernard Schleien is an individual

10   residing in Lima, Peru.

11      12.      On information and belief, Schleien has engaged in some of the

12   misconduct described herein using the fictitious name Jose Castrellon.

13      13.      On information and belief, Latin America For Less, LLC ("LAFL") is a

14   Texas limited liability company with its primary office in Round Rock, Texas.

15      14.      On information and belief, LAFL is an alter ego of Schleien, and Schleien

16   has not adhered to Texas corporate formalities in maintaining this business.

17      15.      SA Luxury does not know the true names and capacities, whether

18   individual, associate, corporate or otherwise, of Defendants sued herein as Does 1-10

19   inclusive, and SA Luxury therefore sues these Defendants by such fictitious names.  SA

20   Luxury will amend this complaint to state the true names and capacities of the Does 1-

21   10 once they have been discovered.  SA Luxury is informed and believes, and, on that

22   basis, alleges that each Defendant sued herein by a fictitious name is in some way

23   liable and responsible to SA Luxury based on the facts herein alleged.

24

**FACTUAL ALLEGATIONS**

25

**SA Luxury's Business**

26      16.      SA Luxury is a travel agency that specializes in designing and managing

27   luxury expeditions to South America.

28      17.      SA Luxury was formed in 2010 to help travelers experience the wonders

Case No. 3:14-cv-4085

3

**COMPLAINT**

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

of South America through a high quality and comfortable experience.

18.     Two principals of SA Luxury (Nick Stanziano and David Rottblatt) had previously worked with Defendants as independent contractors.  By July 2010, David Rottblatt ceased his work with Defendants and formed SA Luxury.  By May 2011, Nick Stanziano ceased his work with Defendants and joined Rottblatt at SA Luxury.

19.     Since its inception, SA Luxury has established a strong track record for providing exceptional logistics and customer service in planning trips to South America.

20.     SA Luxury operates a website located at <saluxuryexpeditions.com> (the "SA Luxury Website"), where it describes its services and allows potential clients to submit online inquiries.  SA Luxury reviews and responds to each inquiry it receives with a personal response.

21.     Over the last three years, SA Luxury has expended significant resources promoting its business in connection with the SA LUXURY EXPEDITIONS trademark. Among other things, SA Luxury has advertised on the Internet using Google AdWords. As a result of SA Luxury's marketing efforts, when Internet users search for the phrase "SA Luxury" they are presented with both sponsored results and high-ranking organic results for the SA Luxury Website.

22.     Based on SA Luxury's marketing efforts, consumers have come to associate the SA LUXURY EXPEDITIONS trademark with SA Luxury and SA Luxury's services.

**Defendants' Business**

23.     Defendants compete with SA Luxury in providing travel services for those interested in visiting South America.

24.     At least in part, Defendant Schleien provides his travel services through LAFL.

25.     While Schleien primarily resides in Peru, he has significant contacts with the United States.  On information and belief, Schleien owns and operates LAFL, which is a Texas limited liability company based in Round Rock, Texas.

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

26.     On information and belief, LAFL is an alter ego of Schleien, and Schleien has organized and operated LAFL as a mere tool or business conduit for himself.  On information and belief, Schleien owns LAFL in its entirety, exhibits unified control over LAFL, has inadequately capitalized LAFL, has not adhered to Texas corporate formalities with respect to LAFL, and commingles his personal assets and accounts with those of LAFL.  Moreover, Schleien interchangeably uses his personal name and the name of LAFL to register intellectual property rights and domain names.  Thus, LAFL is merely an alter ego of Schleien and should not be afforded the limited liability provided under Texas law or the law of any other state.

27.     Defendants own and operate websites that describe their South American travel services, including <latinamericaforless.com>, <argentinaforless.com>, <chileforless.com>, <costaricaforless.com>, <galapogosforless.com>, <brazilforless.com>, and <peruforless.com>.

28.     On information and belief, Defendants use Google AdWords to promote their websites.

**Defendants' Misconduct**

29.     Beginning in April 2012, Defendants recognized that the growth of SA Luxury was threatening their business.  Thus, Defendants began perpetrating attacks against SA Luxury to interfere with SA Luxury's business.

30.     Defendants' misconduct has continued since April 2012, has significantly injured SA Luxury, and continues to injure SA Luxury.

**A.     Defendants' First Threatening Email to SA Luxury**

31.     On April 24, 2012, Schleien sent an email to Nick Stanziano of SA Luxury, where Schleien threatened SA Luxury's business.

32.     Specifically, Schleien made the following statements in his email:

- "You should not do anything that directly conflicts with my business."

- "I don't mind if you continue to be a competitor of mine, but I don't want to see any actions that may be perceived as I (sic) direct action against my interests, not now or in the future."

- "Basically, within the boundaries of the legal system, I will become a cautious and focused business man that sees your business interest in eternal direct conflict with mine."

- "I will aggressively attempt to hire your entire staff."

- "I will have a talk with providers."

- "You will have me fully focused on seeing you as a direct rival who has engaged on a 'survival of the fittest' type of business approach."

- "I am fully aware of the losses I may cause, the paranoia I may create, and the fact that I'd better make all my moves while I have the upper ground."

33.    As a result of this email, SA Luxury became concerned about what Defendants would do to harm SA Luxury's business, and SA Luxury interacted with potential clients and partners accordingly.

**B.     SA Luxury's Online Advertising and Defendants' Click Fraud**

34.    SA Luxury spends significant resources advertising its services to potential customers.  Much of SA Luxury's advertising is in the form of online ads.  In particular, SA Luxury uses Google's AdWords service to display its online ads.

35.    Using AdWords, advertisers, such as SA Luxury, can create text and banner ads to appear alongside organic (free) Internet search results.  Google displays an advertiser's ads when a search is performed on a keyword that was preselected by the advertiser.  For example, an airline might preselect the keywords "cheap airline tickets."  When an Internet user types that phrase into a search engine, sponsored ads are displayed alongside the organic results.  When a user clicks on a sponsored ad, he or she is directed to the advertiser's website.

36.    Google uses a pay-per-click ("PPC") payment model, whereby

advertisers allot a budget for a particular advertising campaign (*i.e.* set of keywords) for a given period of time. While the advertising campaign is active, the advertiser's sponsored ads will appear in Google's search results when a user types a keyword into a search engine. Each time a user clicks on a sponsored ad, the advertiser pays Google for that click and the charge for that click (as determined through the auction process described below) is deducted from the advertiser's budget. When the budget for the time period has been depleted, the sponsored ads will no longer appear until a new budget cycle beings.

37.     Advertisers select keywords through a bidding process. Advertisers bid the maximum amount they are willing to pay for a particular keyword or phrase to trigger the display of an ad. Advertisers bid anywhere from a few cents to a few hundred dollars depending on the bids of the advertisers' competitors.

38.     Google displays the ad associated with the highest bid and quality score in the most prominent position on the search results page. The ad associated with the second highest bid and quality score is displayed in the second most prominent position, and so on.

39.     The prominent placement of sponsored ads is critical for advertisers. The more prominent an ad's placement, the greater the number of users who will click on the ad and be directed to the advertiser's website.

40.     Using AdWords, SA Luxury bids on numerous keywords.

41.     The PPC advertising model is subject to "click fraud." Click fraud refers to the situation where a person imitates a legitimate Internet user and clicks on a sponsored ad for the purpose imposing a cost-per-click on the advertiser, without having any actual interest in the advertiser's goods or services.

42.     One type of click fraud is competitor click fraud. This type of click fraud occurs when the perpetrator of the fraud repeatedly clicks on the sponsored ad of a competitor in an effort to deplete a competitor's advertising budget and to cause the competitor's ads not to appear once its budget is depleted. At the same time, the click

fraud victim incurs the costs-per-click without obtaining the benefit—*i.e.* the click fraud victim pays for clicks executed by persons other than bona fide potential customers.

43.     Moreover, by exhausting the ad budget of the click fraud victim, competitor click fraud lowers the cost of the targeted keyword for the perpetrator.  Once the perpetrator has depleted its competitor's advertising budget, the perpetrator's ads will be displayed in a more prominent position and at a lower price.  At the same time, the cost for the victim to convert a click into an actual sale increases because of the fraudulent clicks.

44.     Click fraud can be accomplished through several methods, including manually, where real people repeatedly click on sponsored ads and through computerized tools, which automatically click on sponsored ads.

45.     Beginning in 2012, SA Luxury began detecting unusual clicking activity on its AdWords ads.  In particular, SA Luxury noticed a significant increase in clicks on its ads during weekdays—but a drop in clicks on the weekend.  Moreover, the IP addresses associated with these clicks were geographically concentrated, and the clicks associated with these IP addresses occurred repeatedly, often several times a day.  Finally, the people who made these clicks only viewed the SA Luxury website for a brief period of time, well below the average amount of time a visitor spends on the website.

46.     On information and belief, Defendants were responsible for this click fraud—*i.e.* Defendants clicked on SA Luxury's ads to impose costs on SA Luxury, to deplete SA Luxury's advertising budget, and to cause Defendants' online ads to appear in a more prominent position.

47.     On information and belief, Defendants engaged in this click fraud to harm SA Luxury.

48.     On information and belief, as a result of Defendants' click fraud, SA Luxury incurred costs for unauthorized clicks on its advertisements.  Additionally, on information and belief, as a result of Defendants' click fraud, SA Luxury's advertising

budget became depleted, causing its ads not to appear to bona fide consumers.

**C.    Defendants' Submission of Fake Leads**

49.    The SA Luxury Website allows potential customers to submit inquiries to SA Luxury.  Specifically, the SA Luxury Website contains an online form, through which potential customers can submit their name, phone number, email address and specific inquiry.

50.    When a potential customer submits an inquiry through the SA Luxury Website, SA Luxury reviews the inquiry and responds to the potential customer with a personalized reply.

51.    SA Luxury spends a significant portion of its work activity examining such inquiries and researching and preparing responses.  SA Luxury makes this investment because a large portion of its business derives from these initial inquiries.

52.    On information and belief, beginning in April 2012, Defendants repeatedly made false inquiries to SA Luxury through the SA Luxury Website.  During this time, Defendants made up to ten submissions per day.

53.    Defendants' fake submissions appeared to be bona fide customer inquiries, causing SA Luxury to incur the time and expense of researching and preparing a response.  In actuality, the contact information for the client submissions proved to be fictitious.

54.    On information and belief, Defendants made several of their fake submissions to the SA Luxury Website using an IP address owned by the same hosting company Defendants used to host their own websites.

55.    Defendants had no interest in receiving travel information from SA Luxury. Rather, Defendants submitted these fake inquiries to distract SA Luxury from bona fide customer inquiries.

56.    On information and belief, Defendants also made these fake submissions to discover SA Luxury's marketing techniques, and to use that knowledge to craft fake reviews.

57.    In total, Defendants submitted hundreds of fraudulent submissions to SA Luxury over the course of the month.

58.    Defendants engaged in this conduct intentionally with the goal of harming SA Luxury.

59.    As a result of Defendants' fake submissions, SA Luxury was harmed.

**D.    Defendants Posted Fake Reviews about SA Luxury on Third Party Websites**

60.    Websites such as <tripadvisor.com>, <fodors.com>, <yelp.com>, <roughguides.com>, and <plus.google.com> provide a forum where consumers can post reviews about travel-related services.

61.    These third party review websites have become extremely popular and influence a large portion of the consuming public.  As a limited example, the TripAdvisor website experiences approximately 19 million visitors per month.

62.    On information and belief, a large portion of consumers who are planning a luxury trip to South America consult these third party review sites before deciding whether to purchase travel-related services from a particular agency, such as SA Luxury.

63.    Before May 2012, SA Luxury enjoyed only positive reviews on these third party websites.

64.    Between May 2012 and April 2013, fake reviews about SA Luxury began to appear on <tripadvisor.com>, <fodors.com>, <yelp.com>, <roughguides.com>, and <plus.google.com> (the "Fake Reviews").

65.    SA Luxury determined that the Fake Reviews were in fact fake because they contained factual inaccuracies and did not align with travel that SA Luxury had arranged.  As an example, one of the Fake Reviews falsely stated that David Rottblatt and Nick Stanziano sought to bribe the consumer to refrain from publishing negative statements about SA Luxury.  Rottblatt and Stanziano never engaged in such conduct.

66.    Additionally, the Fake Reviews appeared on these third party websites in a much larger volume when compared to SA Luxury's prior two years of operation,

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

which also signaled that the new reviews were not bona fide consumer reviews.   In total, at least eighteen Fake Reviews appeared on these websites.

67.     These Fake Reviews contained only negative statements about SA Luxury.  As limited examples, the Fake Reviews contained the following statements:

- If you go anywhere in South America, don't do it with SA Luxury Expeditions.

- Hi, we are former clients of SA Luxury Expeditions. We had a terrible experience with them and we have posted our trip report on a different web site. Just look around and you will find several negative reviews on this travel agency.

- During our travels to Peru there were so many mistakes by SA Luxury Expeditions that we felt abandoned. Once we returned home, they never responded to our emails and calls and made it very clear to us that they do not plan to reimburse us any money.

- Upon arriving to Peru, we received VERY poor service from them and we had a terrible and stressful trip.

- I recently traveled along with some friends with SA Luxury Expeditions. Truth is we regret having hired them to take care of our trip because although there were some wonderful moments, we experienced too many problems with their services. At the end, it seemed to us they were a bit of a rookie company in the tourism business.

- Upon arriving at Iguazu, we phoned SA Luxury Expeditions. I was furious, and still am. It is unbelievable I had spent such an important amount of my life's savings for such a stressful experience. The service was utterly deficient and the trip was overall poorly planned.

- It's with this experience that I can assert SA Luxury Expeditions doesn't offer what you would expect.

68.     On information and belief, Defendants posted all of the Fake Reviews.

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

69.     On information and belief, Defendants posted the Fake Reviews to tarnish SA Luxury's reputation, to damage SA Luxury, and to divert business away from SA Luxury and to Defendants.

70.     SA Luxury was harmed and continues to be harmed by the Fake Reviews.

**E.      Defendants' Creation of the <saluxuryexpeditions-reviews.org> Website**

71.     In   March   2013,   Defendants   registered   the   domain   name <saluxuryexpeditions-reviews.org>.  Defendants then created a website associated with this domain name, which displays fake consumer reviews about SA Luxury (the "Fake SA Review Website").

72.     The Fake Review Website republishes the Fake Reviews that appeared on   the   third   party   websites:   <tripadvisor.com>,   <fodors.com>,   <yelp.com>, <roughguides.com>, and <plus.google.com>.

73.     The   Fake   Review   Website   also   contains   false   and   disparaging statements about SA Luxury in addition to the Fake Reviews, including the following introductory review:

> We are two travelers who met on a very popular travel web site after we had concluded our respective trips to Peru. We are both former clients of SA Luxury Expeditions, an online travel agency that claims to be based in the USA www.saluxuryexpeditions.com
>
> We trusted them with a trip that was supposed to be an adventure of a lifetime and we feel they have betrayed our confidence.
>
> Upon arriving to Peru, we received VERY poor service from them and we had a terrible and stressful trip. The country is beautiful but our travel agency was uncaring and unresponsive.
>
> During our travels to Peru there were so many mistakes by SA Luxury Expeditions that we felt abandoned. Once we returned home, they never responded to our emails and calls and made it very clear to us that they do not plan to reimburse us any money.
>
> It is our belief that they are excellent at projecting an image of professionalism with presumably countless satisfied travelers, but this is no more than just a projected image. In reality, they do not deliver on their promises.
>
> Furthermore, after researching travel forums and their own Facebook account, we have found that they have more negative than positive



KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

reviews and their Facebook account has virtually no feedback from real people.

Unfortunately, we are not alone. We have researched the Internet and we have found out that this travel agency has several negative reviews.

We have created this web site so anyone who is considering traveling with them has easy access to the reviews they don't want you to find.

74.     On information and belief, consumers who see the Fake SA Review Website believe that it is a bona fide consumer review website about SA Luxury.

75.     On information and belief, Defendants created the Fake SA Review Website to tarnish SA Luxury's reputation, to damage SA Luxury, and to divert business away from SA Luxury and to Defendants.

76.     Shortly after Defendants created the Fake SA Review Website, Defendants began bidding on the SA LUXURY EXPEDITIONS trademark (and similar terms) in Google AdWords to drive Internet traffic to the Fake SA Review Website.

77.     As a result, when consumers searched the Internet for SA Luxury, they were diverted to the Fake Review Website and they saw the false and disparaging reviews about SA Luxury.

78.     Defendants' creation and operation of the Fake SA Review Website, and Defendants' use of Google AdWords to divert SA Luxury's Internet traffic to the Fake SA Review Website, have harmed SA Luxury.

79.     The Fake SA Review Website continues to harm SA Luxury as the website remains operational as of the filing of this complaint.

**F.     Defendants Sent SA Luxury Another Threatening Email to SA Luxury**

80.     On June 1, 2012, Schleien sent another threatening email to the principals of SA Luxury.  Among other things, the email stated:

- "While working for my firm you engaged in illegal unfair competition."

- "Your actions are illegal according to Peru; US; and international legislation."

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

- "Why am I sharing this with you? Just so you are certain that if I am pushed to; I will: 1) Go to the fullest extent of the law in Peru; the USA; and wherever else I can stretch my budget to."

- "I will: . . . 2) Publish the story online in order to alert the general public, the travel industry and future employers."

- "Yes, resorting to lawyers can be expensive and tedious and that is why I have not proceeded this way yet, but I will not risk my business and good name for any reason."

- "You have worked in my firm and you know how I conduct business: I don't mess with anyone and have not accumulated any enemies. As far as I know, you are the only two individuals who I would suspect if anything 'weird' happened in the future."

81.    As a result of this email, SA Luxury became concerned about what actions Defendants would take to harm SA Luxury, and SA Luxury interacted with potential clients and partners accordingly.

**G.    Defendants' False and Disparaging Statements to Providers**

82.    SA Luxury relies on various third party service providers to provide travel services to SA Luxury's customers.  SA Luxury relies on these providers for such things as room and board, tours, and tour-related services.

83.    SA Luxury has invested significant time and effort in fostering relationships with these service providers, including competitive pricing and priority service.  As a result, SA Luxury's relationships with its service providers function as a cornerstone of SA Luxury's business.

84.    In or around June 2012, Schleien began making false and disparaging statements to SA Luxury's service providers, including Giardinos, Say Hueque, Casa San Blas Boutique, Maytaq Boutique, Peru Sightseeing.

85.     Around the same time, Schleien sent emails to SA Luxury's service providers, which falsely disparaged SA Luxury and discouraged the service providers from working with SA Luxury.

86.     Among other things, Schleien falsely accused the founders of SA Luxury of engaging in illegal activities.

87.     As a result of Schleien's false and disparaging statements, the following service providers terminated their relationship with SA Luxury and caused SA Luxury to scramble to find substitutes: Giardinos, Say Hueque, Casa  San Blas Boutique, Maytaq Boutique, Peru Sightseeing.

**H.     Defendants' Fraudulent Trademark Application**

88.     In September 2012, Schleien filed an application with the United States Patent and Trademark Office ("PTO") to register SA LUXURY EXPEDITIONS for use in connection with "arranging and coordinating travel arrangements for individuals and groups, namely, destinations stays, honeymoons, family vacations, and destination weddings; Organization of excursions, sightseeing tours, holidays, tours and travel." Schleien's trademark application was assigned Application Serial No. 85719320 (the "Application").

89.     In his trademark filings with the PTO, Schleien stated that he had "no knowledge of the existence of SA Luxury Expeditions LLC before filing the registration of the trademark SA Luxury Expeditions with 'intent to use.'"

90.     In his trademark filings with the PTO, Schleien also stated that beginning in 2009 he and his staff developed the idea of using the SA LUXURY EXPEDITIONS mark in connection with Schleien's travel-related services.

91.     The statements in Schleien's Application were material to the Application and were false.

92.     Schleien knowingly made the false statements in the Application to mislead the PTO about his rights in the SA LUXURY EXPEDITIONS mark.

93.     Schleien submitted the false Application to the PTO to harm SA Luxury.

KRONENFELD | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

94.    The PTO relied on the false statements in the Application and published the supposed trademark for opposition on February 26, 2013.

95.    As a result of Schleien's fraudulent Application, SA Luxury was forced to initiate a trademark opposition proceeding with the Trademark Trial and Appeal Board ("TTAB").

96.    SA Luxury incurred significant costs in monitoring Schleien's fraudulent Application and in litigating the opposition proceeding.

97.    Thus, SA Luxury has been damaged as a result of Schleien's fraudulent registration with the PTO.

**I.    Defendants' Spam, Negative SEO, and Hacking Attempts**

98.    As discussed above, SA Luxury relies on its strong organic search engine rankings, particularly through the Google search engine, to market its services.

99.    Negative Search Engine Optimization refers to a practice whereby competitors create hundreds or thousands of "poor quality" backlinks to a website with the intention of harming that website's organic search rankings or even to remove the website from Google's index completely.

100.    Beginning in late 2012, hundreds of thousands of "poor quality" links appeared on websites and in emails, which linked to the SA Luxury Website.  These links were "poor quality" because they were associated with websites that had no relationship to SA Luxury or to travel generally and/or they were associated with websites that had low click through rates, poor landing page quality, and poor landing page load time, and/or were associated with questionable commercial websites.

101.    On information and belief, Defendants created these poor quality backlinks automatically through a program, code, or command.

102.    On information and belief, the creation of these negative backlinks lowered the organic Google search rankings for the SA Luxury Website, and thereby negatively affected SA Luxury's marketing and business model.

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

103.    After Defendants created these negative backlinks, consumers would no longer see the SA Luxury Website near the top of their search results. As a result, consumers who would have clicked on a link to the SA Luxury Website were diverted to other websites.

104.    Around the same time, SA Luxury noticed repeated unsuccessful attempts to access its computer servers. As an example, on July 3, 2013 alone, approximately 5,000 unsuccessful attempts were made to access SA Luxury's servers.

105.    On information and belief, Defendants were responsible for these attempts to access SA Luxury's servers using an automated program, information, code or command.

106.    SA Luxury expended in excess of $5,000 investigating these hacking attempts and in combating the negative backlinks.

<div align="center">

**FIRST CAUSE OF ACTION**

**(FALSE ADVERTISING UNDER THE LANHAM ACT, 15 U.S.C. §1125(A))**

</div>

107.    SA Luxury repeats and incorporates by reference the allegations in Paragraphs 1-106 above.

108.    SA Luxury and Defendants compete in selling travel services to consumers planning trips to South America.

109.    On information and belief, Defendants published false statements of fact in commercial advertisements about SA Luxury's services. Specifically, Defendants published the Fake Reviews on the third party websites <tripadvisor.com>, <fodors.com>, <yelp.com>, <roughguides.com>, and <plus.google.com>. Additionally, Defendants published the Fake Reviews and additional false statements about SA Luxury on the Fake SA Review Website.

110.    Defendants' fake reviews contained false and disparaging statements about SA Luxury and about SA Luxury's travel services.



KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

111.   Defendants' false advertisements were aimed at members of the relevant consuming public—namely, people interested in purchasing travel services for trips to South America.

112.   Defendants intended their false advertisements to deter consumers from purchasing SA Luxury's services, and by implication, to encourage consumers to purchase Defendants' services.

113.   Defendants' false advertisements actually deceived or had the tendency to deceive a reasonable consumer, as they were false, material, and concerned central aspects of SA Luxury's travel services.

114.   Defendants caused their false advertisements to enter interstate commerce by publishing them on multiple websites, which targeted consumers throughout the United States.

115.   As a result of Defendants' false advertisements, SA Luxury has been and continues to be harmed.

## SECOND CAUSE OF ACTION

### (FRAUD)

116.   SA Luxury repeats and incorporates by reference the allegations in Paragraphs 1-106 above.

117.   SA Luxury and Defendants compete in selling travel services to consumers planning trips to South America.

118.   The SA Luxury Website allows potential customers to submit their inquiries and contact information to SA Luxury, so that SA Luxury can contact those potential customers, provide responses to their inquiries, and encourage them to purchase travel services through SA Luxury.

119.   On information and belief, Defendants knowingly submitted false inquiries and contact information to SA Luxury through the SA Luxury Website.

120.   On information and belief, Defendants made these fake submissions to distract SA Luxury from attending to bona fide customers.

121.   Because SA Luxury could not determine that the fake submissions were false from their face, SA Luxury spent time reviewing the fake submissions and researching and drafting replies.

122.   As a result of Defendants' fake submissions, and as a result of SA Luxury's reliance on the fake submissions, SA Luxury wasted time and resources that it would have otherwise devoted to bona fide business activities.

123.   As a result of Defendants' fake submissions, SA Luxury was harmed.

### THIRD CAUSE OF ACTION

### (FRAUD ON THE PATENT AND TRADEMARK OFFICE)

124.   SA Luxury repeats and incorporates by reference the allegations in Paragraphs 1-106 above.

125.   SA Luxury and Defendants compete in selling travel services to consumers planning trips to South America.

126.   Since 2010, SA Luxury has continuously used the SA LUXURY EXPEDITIONS trademark in connection with its travel services.

127.   As a result of its continuous use of the SA LUXURY EXPEDITIONS mark, SA Luxury has acquired goodwill in connection with the mark, and consumers have come to associate the mark with SA Luxury and SA Luxury's travel services.

128.   Before SA Luxury began using the SA LUXURY EXPEDITIONS mark, Defendants had never used the SA LUXURY EXPEDITIONS mark and had never intended to use the SA LUXURY EXPEDITIONS mark.

129.   In September 2012, Defendants filed an application with the PTO to register the trademark SA LUXURY EXPEDITIONS for use in connection with "arranging and coordinating travel arrangements for individuals and groups, namely, destinations stays, honeymoons, family vacations, and destination weddings; Organization of excursions, sightseeing tours, holidays, tours and travel."

130.   In their trademark filings with the PTO, Defendants stated that they had "no knowledge of the existence of SA Luxury Expeditions LLC before filing the



registration of the trademark SA Luxury Expeditions with 'intent to use.'"  This statement was false and Defendants knew it was false when they made it.

131.    In their trademark filings with the PTO, Defendants also stated that beginning in 2009 Defendants and their staff developed the idea of using the SA LUXURY EXPEDITIONS mark in connection with Defendants' travel-related services. This statement was false and Defendants knew it was false when they made it.

132.    Defendants' above-referenced statements to the PTO were false representations of material fact because Defendants never had any intent to use the SA LUXURY EXPEDITIONS mark and because Defendants were aware of SA Luxury's prior and continuous use of the SA LUXURY EXPEDITIONS mark.

133.    Defendants sought to induce the PTO to rely on Defendants' false statements and thereby issue a trademark registration to Defendants for SA LUXURY EXPEDITIONS.

134.    The PTO relied on Defendants' false statements in Defendants' Application and published Defendants' purported SA LUXURY EXPEDITIONS trademark for opposition on February 26, 2013.

135.    As a result of Defendants' misconduct, SA Luxury was forced to file and litigate an opposition proceeding before the Trademark Trial and Appeal Board.  At the same time, SA Luxury was been prevented from registering the SA LUXURY EXPEDITIONS trademark with the PTO in connection with its own travel services.

**FOURTH CAUSE OF ACTION**

**(VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030)**

136.    SA Luxury repeats and incorporates by reference the allegations in Paragraphs 1-106 above.

137.    SA Luxury's computer servers are used in and affect interstate commerce and communications, and thus are protected computers.

//

//

**Hacking Attempts and Negative Backlinks**

138.   On information and belief, Defendants repeatedly sought to access SA Luxury's computer servers without authorization using an automated program, information, code or command.

139.   Additionally, and on information and belief, Defendants created low quality backlinks to the SA Luxury Website through an automated program, information, code or command in order to negatively affect the search engine rankings of the SA Luxury Website.

140.   Defendants' above-described misconduct violates 18 U.S.C. §§1030(a)(4), 1030(a)(5)(A), 1030(a)(5)(C), 1030(b), and 1030(g).

141.   As a result of Defendants' misconduct, SA Luxury incurred losses of more than $5,000 in less than a one-year period in the form of investigatory efforts, computer analysis, search engine re-optimization, and enhanced computer security measures.

**Click Fraud**

142.   Additionally, Defendants violated 18 U.S.C. §§1030(a)(4) and 1030(a)(5)(C) by engaging in click fraud.

143.   Google's computers are used in and affect interstate commerce and communication, and thus are protected computers.

144.   SA Luxury created and stored online ads on Google's protected computers.

145.   Google only authorizes access to online ads stored on its protected computers for bona fide clicks—*i.e.* clicks by persons genuinely interested in the advertised products or services.

146.   Defendants repeatedly clicked on SA Luxury's online ads, which are stored on Google's computers.

147.   In clicking on SA Luxury's online ads, Defendants accessed Google's protected computers, *i.e.* when Defendants clicked on SA Luxury's ads, Defendants

1  sent an electronic instruction to Google's computers, which interpreted Defendants' click

2  as an interest in SA Luxury's ad, and then redirected Defendants to the SA Luxury

3  Website.

4        148.   Defendants had no interest in learning about or purchasing SA Luxury's

5  service when they clicked on SA Luxury's ads. Rather, Defendants clicked on SA

6  Luxury's ads to impose costs-per-click on SA Luxury, to deplete SA Luxury's advertising

7  budgets, and to increase the prominence of Defendants' own online ads.

8        149.   Thus, Defendants' access to Google's computers exceeded authorized

9  access.

10        150.   As a result of Defendants' misconduct, SA Luxury incurred losses of

11  more than $5,000 in less than a one-year period in the form of investigatory efforts,

12  computer analysis, click fraud fees, and enhanced computer security measures.

13  <center>**FIFTH CAUSE OF ACTION**</center>

14  <center>**(INTERFERENCE WITH BUSINESS EXPECTANCY)**</center>

15        151.   SA Luxury repeats and incorporates by reference the allegations in

16  Paragraphs 1-106 above.

17        152.   SA Luxury and Defendants compete in selling travel services to

18  consumers planning trips to South America.

19        153.   SA Luxury relies on various third party service providers to provide travel-

20  related services to SA Luxury's customers, such as room and board, tours, and tour-

21  related services.

22        154.   These service providers are a critical part of SA Luxury's services, and

23  SA Luxury takes care to foster relationships with these service providers.

24        155.   These service providers included Giardinos, Say Hueque, Casa San Blas

25  Boutique, Maytaq Boutique, Peru Sightseeing.

26        156.   Defendants knew about SA Luxury's business relationship with these

27  service providers because of the overlap in the industry.

28

157.   On information and belief, in or around June 2012, Defendants made false and disparaging statements about SA Luxury to these third party service providers with the intent of disrupting SA Luxury's relationship with these third parties.  These false and disparaging statements were unlawful under California defamation law and the Lanham Act, 15 U.S.C. §1125(a).

158.   As a direct results of Defendants' false and disparaging statements about SA Luxury, several of these third party service providers, including Giardinos, Say Hueque, Casa San Blas Boutique, Maytaq Boutique, Peru Sightseeing, refused to continue working with SA Luxury.

159.   Because SA Luxury had spent considerable time and resources fostering its relationships with these third party service providers, their decision to stop working with SA Luxury left SA Luxury in a lurch, and SA Luxury was forced to find replacement service providers, often at a more expensive rate.

160.   Thus, as a result of Defendants' interference with Giardinos, Say Hueque, Casa San Blas Boutique, Maytaq Boutique, Peru Sightseeing, SA Luxury was harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, SA Luxury prays for a judgment against Defendants as follows:

1.   For a preliminary and permanent injunction requiring Defendants to disable the <saluxuryexpeditions-reviews.org> website;

2.   For a preliminary and permanent injunction requiring Defendants to remove the Fake Reviews;

3.   For an award of compensatory damages in an amount to be proved at trial arising from Defendants' violation of 18 U.S.C. §1030, fraud, fraud on the trademark office, and intentional interference with business expectancy;

4.   For an award of three times Defendants' wrongful profits and three times SA Luxury's damages under 15 U.S.C. §1117;

5.     For an award of punitive damages, pursuant to Civil Code section 3294 or other relevant statute;

6.     For an award of SA Luxury's attorneys' fees under 15 U.S.C. §1117;

7.     For an award of SA Luxury's costs of suit;

8.     For an award of prejudgment interest to the extent allowed by law; and

9.     For such other and additional relief as the Court deems just and proper.

Dated: September 9, 2014                    **KRONENBERGER ROSENFELD, LLP**

By: _____

Jeffrey M. Rosenfeld

Attorneys for Plaintiff SA Luxury
Expeditions LLC

Case No. 3:14-cv-4085                    24                    **COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial of this action by jury.

Dated: September 9, 2014                    **KRONENBERGER ROSENFELD, LLP**

By: ___s/ Jeffrey M. Rosenfeld_____
              Jeffrey M. Rosenfeld

Attorneys for Plaintiff SA Luxury
Expeditions LLC

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

Case No. 3:14-cv-4085                        **COMPLAINT**